IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

SEAN L. FARLEY,

        Plaintiff,

   v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

        Defendant.

Case No. 6:15-cv-00643-AA

OPINION AND ORDER

Kathryn Tassinari
Mark A. Manning
Harder, Wells, Baron & Manning, P.C.
474 Willamette Street, Suite 200
Eugene, OR 97401
    Attorneys for plaintiff

Janice E. Hébert
Assistant United States Attorney
United States Attorney's Office
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97201

Jeffrey E. Staples
Social Security Administration
Office of General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104
    Attorneys for defendant

Page 1 - OPINION AND ORDER

AIKEN, Judge:

Plaintiff Sean Farley brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's application for Title II and Title XVI benefits. For the reasons set forth below, the Commissioner's decision is reversed and this case is remanded for further proceedings.

## BACKGROUND

On April 19, 2011, plaintiff applied for Title II disability benefits. Tr. 126. On July 19, 2011, plaintiff applied for Title XVI benefits. Tr. 222. Both applications allege plaintiff's disability began in January 2006. Tr. 218, 222. Plaintiff argues he is disabled because of hemophilia, Hepatitis B and C, severe arthritis, carpal tunnel syndrome, depression, and extreme high blood pressure. Tr. 239. Plaintiff's applications were denied initially and on reconsideration. Tr. 168-170, 175. On June 12, 2013, plaintiff was represented by an attorney and testified at a hearing held by an Administrative Law Judge ("ALJ"). Tr. 21. On July 23, 2013, the ALJ ruled plaintiff was not disabled. Tr. 18. In the July 2013 decision, the ALJ considered only whether Farley was disabled in the period since the final denial of a prior disability application on October 13, 2010. Tr. 21. On February 13, 2015, the Appeals Council denied plaintiff's request for review, rendering the ALJ's decision final. Tr. 1. Plaintiff now seeks judicial review.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based upon proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014) (internal quotation marks omitted). The court must weigh "both the evidence that supports and the evidence that detracts from the ALJ's" decision. *Mayes v. Massanari*, 276 F.3d 453, 459

(9th Cir. 2001). A rational decision by the ALJ must be affirmed, even if the evidence is susceptible to more than one interpretation, because "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## THE ALJ'S DECISION

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner uses a five-step sequential process to determine whether a person is disabled under the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. At step one, the ALJ found plaintiff had not engaged in "substantial gainful activity" since October 13, 2010. Tr. 24. At step two, the ALJ classified plaintiff's hemophilia, carpal tunnel syndrome, and degenerative disc disease of the lumbar and cervical spine as severe. Tr. 24. At step three, the ALJ found plaintiff's medically severe impairments did not meet or medically equal the severity of one of the listed impairments the Commissioner acknowledges are so severe as to preclude substantial gainful activity. Tr. 25.

The ALJ found plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), subject to the following limitations: "lifting no more than 20 pounds at a time, no more than frequent lifting or carrying objects weighing up to 10 pounds[, and] no more than frequent stooping, kneeling, crouching, crawling, and climbing . . . with no more than occasional fingering with his right hand." Tr. 25. Based on the RFC and the testimony

Page 3 - OPINION AND ORDER

of a vocational expert, the ALJ found plaintiff was unable to perform past relevant work. Tr. 29. Using plaintiff's age, education, work experience, and RFC, the ALJ concluded plaintiff could perform jobs available in the national economy and therefore was not disabled. Tr. 30.

## DISCUSSION

Plaintiff argues the ALJ made five errors in concluding he is not disabled. Pl.'s Br. (doc. 17) at 12. The plaintiff challenges the ALJ's adverse credibility determination, the ALJ's choice to assign little weight to the opinion of a treating physician, the ALJ's failure to discuss hemophilic arthropathy or severe arthritis at step two, and the ALJ's application of a presumption of nondisability based on a 2010 denial of disability benefits. The plaintiff also disputes whether the defendant met her burden of proving plaintiff can work at step five.[1]

I.  *Plaintiff's Credibility*

Plaintiff argues the ALJ failed to provide clear and convincing reasons for rejecting his testimony concerning the severity of his symptoms. Pl.'s Br. at 14. When a claimant's medically documented impairments reasonably could be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . .

---

[1] This last argument is based solely on the first four alleged errors and therefore is not discussed separately in this opinion.

Page 4 - OPINION AND ORDER

symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second guessing. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

The ALJ provided several clear and convincing reasons for finding plaintiff not credible. First, the ALJ fairly concluded plaintiff's testimony was inconsistent with the treatment record. Tr. 26. While an ALJ cannot reject the severity of subjective complaints solely on the lack of objective evidence, an ALJ may look to the medical record for inconsistencies. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999). Further, impairments that can be controlled effectively with medication or treatment are not disabling for purposes of determining eligibility for benefits. *Warre v. Comm'r Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). At the hearing, plaintiff asserted his carpal tunnel and back problems were among the issues preventing him from working. Tr. 46-47. Specifically,

plaintiff asserted he needed to shift positions every ten to fifteen minutes, could not walk all the way around the block where he lived, and could not help with household chores. Tr. 47-49. However, objective medical evidence shows mild findings for his back and wrist ailments. Physical exams in December 2012, January 2013, and April 2013 all indicate normal gait and station. Tr. 1035, 1040, 1044. The same exams indicate plaintiff, save for some tingling and numbness in his hand, had normal neurologic exam results. Tr. 1035, 1039, 1043. An October 2011 evaluation of his carpal tunnel showed "good range of motion in his right wrist, thumb, and digits" with mild conditions. Tr. 1080-81. Further, plaintiff's hemophilia, except to the extent it impacted his shoulder, was fairly characterized as manageable. Tr. 27. The plaintiff worked as a roofer from 1997 to 2006, and while he said he missed work because of his hemophilia, his absences did not prevent him from working entirely and his disease was under fairly good control with treatment. Tr. 44-45. Because the mild clinical findings and work history conflict with plaintiff's representations about the impact of some of his afflictions on his ability to work, the ALJ permissibly considered them in determining whether to credit plaintiff's subjective symptom testimony.

Second, the ALJ fairly concluded the plaintiff's testimony about the severity of his symptoms was inconsistent with his self-reported activity level. Daily activities may serve as a basis for discrediting a claimant when they "contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113

Page 6 - OPINION AND ORDER

(9th Cir. 2012). Plaintiff alleged a disability onset date of January 2006 and maintained through all the stages of his application that his disability persisted for the entire period from 2010 to 2013. Tr. 44-45. At various stages of his application, plaintiff either represented a severely restricted existence or offered vague responses unhelpful to a process of determining his disability. In his Function Report dated August 10, 2011, plaintiff asserted his entire day consisted of "try[ing] to get up take shower sit and rest." [sic] Tr. 279. He also says he "can't walk much can't move fingers or wrists ankels knees can't cut or bang body parts do to bleeding." [sic] Tr. 278. When prompted to describe how he helps with chores, meals, and transportation, plaintiff offers variations of "depends." Tr. 280-81, 283. Despite these representations, plaintiff reported moving boxes in March or April of 2011, fixing cars in December 2010, and recreating on sand dunes in January 2011. Tr. 601, 859, 856. The ALJ reasonably concluded engaging in these moderately demanding physical activities was inconsistent with plaintiff's symptom testimony.

Plaintiff also conceded he was laid off from his last job and that he worked for "six or seven months" after the alleged onset of his disability in January 2006. Tr. 46. Even though the period under review–October 2010 to June 2013–included no gainful work by the plaintiff, the plaintiff's representation that he was disabled beginning in 2006 conflicts with this work history. Applying "ordinary techniques of credibility evaluation," the ALJ

permissibly concluded this conflict undermined the credibility of plaintiff's symptom testimony. *Smolen*, 80 F.3d at 1284.

However, the ALJ's analysis of plaintiff's credibility also included errors. First, the ALJ erred in concluding plaintiff's story about how he began dating his girlfriend suggested he was not credible. Tr. 28. Plaintiff testified that he dated his girlfriend for a time in high school, and she got back in touch years later when she found his phone number. Tr. 51; 58-59. The ALJ summarizes the story as "[the girlfriend] randomly called [plaintiff] and started coming over all the time" and concludes "the testimony [is] almost nonsensical and not entirely reliable." Tr. 28. The ALJ provides no further explanation of why he considers plaintiff's entirely plausible story "nonsensical." Accordingly, plaintiff's statements about his girlfriend are not a convincing reason to disbelieve his symptom testimony. Next, the ALJ's assertion that plaintiff's poker, computer game, and television habits were inconsistent with disability is neither convincing nor supported by substantial evidence. Tr. 28. Sedentary activities like watching television and playing computer games are fully consistent with plaintiff's subjective symptom testimony. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (performance of "home activities . . . not easily transferable to what may be the more grueling environment of the workplace" is not a clear and convincing reason to discredit symptom testimony). The ALJ could not reasonably use these two pieces of testimony to impugn plaintiff's credibility.

Page 8 - OPINION AND ORDER

Even when an ALJ commits legal error, courts uphold the decision where that error is harmless. "We have long recognized that harmless error principles apply in the Social Security Act context." *Molina*, 674 F.3d at 1115. An error is harmless if it is "inconsequential to the ultimate nondisability determination," *id.*, or "if the agency's path may reasonably be discerned," even if the agency "explains its decision with less than ideal clarity," *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 497 (2004) (quoting *Bowman Transp., Inc. v. Ark.—Best Freight System, Inc.*, 419 U.S. 281, 286 (1974)). Here, the ALJ provided several clear and convincing reasons to discredit the plaintiff's testimony. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) (upholding adverse credibility finding when ALJ rested finding on four reasons, two of which were not supported by substantial evidence). The ALJ's credibility determination is affirmed.

II. *Dr. Taylor's Opinion*

Plaintiff also argues the ALJ improperly gave little weight to the opinion of a treating physician, Dr. Jason Taylor. Pl.'s Br. at 16. There are three types of medical opinions in social security cases: those from treating, examining and non-examining doctors. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The medical opinion of a treating physician is entitled to "special weight" because the physician "has a greater opportunity to know and observe the patient as an individual." *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989) (citations omitted). If a treating

Page 9 - OPINION AND ORDER

doctor's opinion is contradicted by a non-examining physician, an ALJ may reject it only by providing specific and legitimate reasons that are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester*, 81 F.3d at 830-31). The contrary opinion of a non-treating medical expert does not alone constitute a specific, legitimate reason for rejecting a treating physician's opinion. *Magallanes v. Bowen*, 881 F.2d 747, 752 (9th Cir. 1989).

Relying on the opinions of nonexamining physicians, the ALJ concluded plaintiff could lift 10 pounds no more than frequently and 20 pounds no more than occasionally. Tr. 25, 28, 142, 165. Dr. Taylor's opinion recommends plaintiff lift 10 pounds no more than occasionally and never lift 20 pounds. Tr. 982. Dr. Taylor also asserts plaintiff would be unable to maintain a regular work schedule more than twice a month. *Id.*

The ALJ failed to provide specific, legitimate reasons to discredit Dr. Taylor's opinion. The ALJ found Dr. Taylor's opinion inconsistent with his own treatment notes. Tr. 28. Specifically, the ALJ questioned Dr. Taylor's opinions regarding plaintiff's hemophilia and hepatitis C, finding Dr. Taylor "was primarily following the claimant for right shoulder pain." Tr. 28-29. This finding is contrary to the record. While Dr. Taylor acknowledged shoulder pain at the beginning of his note, he formulated a treatment plan for plaintiff's hemophilia, incorporated by reference a treatment note from a hematology fellow, Dr. Meghan Liel, and indicated that plaintiff would be referred to orthopedics

for his shoulder problems. Tr. 963, 967-68. The record indicates Dr. Taylor treated plaintiff's hemophilia. Therefore, the ALJ improperly concluded it was inconsistent for Dr. Taylor to speak to the severity of that condition. Beyond this misunderstanding about Dr. Taylor's treatment of the plaintiff, the ALJ does not point to any specific examples of such inconsistencies, and I find none apparent in the record. Further, objective medical evidence elsewhere in the record supports Dr. Taylor's opinion. First, plaintiff's visit with a physical therapist in February 2012 revealed atrophy in his right shoulder muscles, crepitus in his joints, and a decreased range of motion in his right shoulder; the visit culminated in a diagnosis of a clinical joint deformity. Tr. 965-66. Second, an MRI in December 2008 revealed a diagnosable shoulder impingement. Tr. 840. Contrary to the ALJ's conclusion, Dr. Taylor's opinion is not inconsistent with his own treatment notes or the medical record.

I cannot conclude the ALJ's error in weighing Dr. Taylor's opinion was harmless. The scope of Dr. Taylor's treatment of plaintiff allowed Dr. Taylor to express an opinion on plaintiff's RFC. He observed a relationship between plaintiff's hemophilia and joint disease throughout his medical evaluation. Tr. 980-981. Drs. Taylor and Liel's clinical observations of a "markedly decreased" range of motion and swelling in plaintiff's right shoulder support crediting Dr. Taylor's opinion as to plaintiff's ability to lift. Tr. 963, 968.

I agree with the ALJ that it is unclear what led Dr. Taylor to

conclude that plaintiff will miss two or more days of work per month. Tr. 29. On remand, the ALJ also should reconsider this aspect of Dr. Taylor's opinion, keeping in mind an ALJ's duty to develop the record to resolve ambiguities in the medical evidence. *Mayes*, 276 F.3d at 459-60.

III. *The Role of Hemophilia in the Step Two Analysis*

Plaintiff assigns error to the ALJ's omission of hemophilic arthropathy from the step two analysis. Pl.'s Br. at 18. Step two is "a de minimis screening device [used] to dispose of groundless claims." *Smolen*, 80 F.3d at 1290. "An impairment or combination of impairments may be found not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (citation and quotation marks omitted) (emphasis in original). At step two, the ALJ is bound to consider all relevant medical evidence and may find an impairment nonsevere only if the nonseverity is "clearly established by medical evidence." (quoting SSR 85-28).

While the ALJ recognized the purported connection between plaintiff's hemophilia and shoulder pain, the ALJ concluded the shoulder impairment was "non-severe" because it had "not yet lasted 12 months." Tr. 27, 24. On the other hand, the ALJ found plaintiff's hemophilia to be severe but manageable. Tr. 24, 27. The ALJ also mentioned plaintiff's "other symptoms and complaints that appear periodically throughout the record . . . includ[ing] but not limited to a history of alcohol and substance abuse,

hepatitis C, hypertension, and depression" and concluded "these conditions, considered singly or in combination, have caused only transient and mild symptoms" and were not severe. Tr. 24. Despite this long list of nonsevere impairments, the ALJ did not discuss plaintiff's severe arthritis or hemophilic arthropathy at all in the step two analysis.

The ALJ's discussion of plaintiff's hemophilia raises serious questions about whether the ALJ's decision at step two rested on a complete and correct understanding of the record. The question to the ALJ was not whether the hemophilia, standing alone, caused plaintiff's disability, but rather whether the hemophilia, together with other severe or nonsevere problems, "significantly limit [plaintiff's] ability to perform basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). By omitting any discussion of arthritis and the potential for hemophilia to cause joint pain, the ALJ failed to consider all relevant evidence at step two.

Also, the ALJ's conclusion the shoulder impingement was not severe was not supported by medical evidence. Despite objective medical evidence plaintiff's shoulder was significantly compromised in February 2012, the ALJ used the date of a formal diagnosis made during surgery in April 2013 as the onset date. Tr. 963-68; 24. Further, the ALJ reasoned that because the shoulder surgery was "successful" the impingement could not contribute to a finding of disability. Tr. 27. This conclusion is not supported by substantial evidence. Dr. Garry Vallier operated on plaintiff's shoulder on April 15, 2013. Tr. 1002-1003. The ALJ supported his

finding the surgery "successful" by citing generally to 79 pages of medical records from North Bend Medical Centers, of which only one two-page note records an interaction after the surgery. Tr. 27, 1031-1109. Though it transcribes a post operative visit, insofar as the note discusses plaintiff's shoulder condition, it is identical to a note from before the surgery. *Compare* Tr. 1031-1032 *and* Tr. 1033-34. The records cited by the ALJ simply do not support his conclusion the surgery successfully resolved plaintiff's shoulder impingement.

I cannot conclude the errors at step two were harmless. The inclusion of arthritis or hemophilic arthropathy in the list of severe or nonsevere impairments could change the formulation of the RFC and what jobs are available to the plaintiff. In assessing an RFC, an ALJ is bound to consider limitations and restrictions imposed by *all* of an individual's impairments, even those deemed not severe. *See Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) (citing Social Security Ruling 96-8p); 20 C.F.R. § 404.1545(a)(2). Likewise, an assessment of the plaintiff's RFC will be more accurate with medical evidence of the current state of his shoulder impingement.

IV. *Presumption of Non-Disability*

Finally, plaintiff asserts the ALJ erred in finding the plaintiff did not meet his burden of rebutting the presumption of continuing non-disability. Pl.'s Br. at 12. If a claimant makes a second attempt to receive benefits after an earlier denial, the claimant is presumed to be not disabled for the period between the

claims. *Lester*, 81 F.3d at 827. A plaintiff can overcome that presumption if he shows both changed circumstances and greater disability since his last claim. *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988). The ALJ concluded there were no changed circumstances in this case. Tr. 21. That conclusion was error; medical evidence supports a conclusion plaintiff's hemophilia and related limitations impacted him differently after the May 2010 denial. However, the error was harmless because the ALJ went on to make a determination of plaintiff's rights under the Act with a full five-step analysis.

## CONCLUSION

The decision of the Commissioner is REVERSED and REMANDED. On remand, the ALJ must: (1) perform a step two analysis that explicitly determines whether and when plaintiff's hemophilic arthropathy, severe arthritis, and/or shoulder pain became severe medically determinable impairment(s); (2) reformulate the RFC giving Dr. Taylor's opinion due weight considering all medical evidence, including Dr. Liel's note and other evidence from treating providers; and (3) conduct a new step five analysis to determine if plaintiff is disabled.

IT IS SO ORDERED.
Dated this 27 day of June, 2016.

_____
Ann Aiken
United States District Judge

Page 15 - OPINION AND ORDER